UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                              Chapter 11

Kenrock Enterprises LLC,                            Case No. 23-10197 (DSJ)
Rockwood Music Corporation,                         Case No. 23-10198 (DSJ)

                                                   Debtors.            Jointly Administered
----------------------------------------------------------x

**DEBTORS' MOTION TO APPROVE SETTLEMENT WITH LANDLORD**

The motion of Kenrock Enterprises LLC and Rockwood Music Corporation (collectively the "Debtors") pursuant to Bankruptcy Rule 9019(a) seeking approval of the attached Settlement Agreement with their landlord, Allen/Orchard LLC ("the Landlord"), a copy of which is annexed hereto as Exhibit "A" (the "Settlement"), represents and shows this Court as follows:

**Preliminary Statement**

1.     The Debtors are very encouraged by the fact that they were able to reach a Settlement with the Landlord even after the automatic stay was vacated.  The Settlement allows the Debtors to continue in possession of part of the premises, with significant financial concessions by the Landlord.  As discussed below, without the Settlement, the Debtors would be forced to cease operations, so the Settlement, which gives the Debtors new life is manifestly in the best interests of the Debtors and their creditors.

**Background**

2.     On February 9, 2023  (the "Petition Date"), the Debtors each filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code and have thereafter remained in possession of their respective assets as debtors and debtors-in-possession.  The Debtors' cases are being jointly administered pursuant to Order dated March 23, 2023.

1

3.  The Debtors operate a popular music venue on the Lower East Side of Manhattan known as Rockwood Music Hall ("Music Hall"). The Debtors jointly lease premises from the Landlord pursuant to a lease originally dated December 2005, as subsequently amended. The premises consists of three separate stages, one operated by Rockwood, which puts on shows with no cover charge and generates revenues from the sale of liquor; and two operated by Kenrock, which charges an admission fee as well as generating revenue from the sale of liquor.

4.  In the wake of Covid-19 and the ensuing shutdown of business for some fifteen months in 2020-2021, the Debtors' business declined significantly. Although the Landlord worked with the Debtors on Covid-19 rent reductions and a forbearance under an omnibus agreement dated May 1, 2021, the Debtors were unable to meet even these reduced obligations as they struggled to regain their core audience. As a result, the Debtors became delinquent with their creditors, and in particular their rent obligations.

5.  While the impetus for the filing was an enforcement proceeding by New York State for past due sales taxes, the primary problem going forward was to reach a deal with the Landlord. Indeed, an agreement was quickly reached with New York State for the payment of back taxes over time, but the Debtors continued to be unable to pay ongoing rent even after the Chapter 11 filing. As a result, by Order dated March 29, 2023, the automatic stay was vacated so that the Landlord could commence eviction proceedings.

6.  The Debtors' principal and sole member and manager is Ken Rockwood, who has been in the entertainment business for most of his adult life. Mr. Rockwood has developed a strong loyalty with various artists, and at this critical juncture, the artists offered to perform a series of benefit concerts starting the July 4th weekend and continuing throughout the summer in an effort to "Save Rockwood" (the "<u>Benefit Concerts</u>"). Based upon the anticipated cash

2

revenues from the Benefit Concerts, the Debtors were able to negotiate with the Landlord for a modification of the existing leases at reduced rent.

7. Under the proposed Second Omnibus Lease Amendment, the Debtors have surrendered a portion of the Kenrock premises (Store A) and retain the balance of the Kenrock premises (Store B) at 190-192 Allen Street, together with all of the Rockwood premises at 196 Allen Street. The Debtors are also eligible for significant reductions of the rent arrears totaling an estimated $2,164,118 based upon a lump sum payment of $178,000 plus ongoing payment of rent beginning with April 2023 at reduced levels of $17,875 per month for the Kenrock space and $9,625 per month for the Rockwood case, for a new combined rent of $27,500 per month going forward. The monies needed to make the lump sum payments shall be generated by the Benefit Concerts.

8. On May 10, 2023, the Debtors filed a joint plan of reorganization (the "Plan"). Confirmation of the Plan has been postponed pending conclusion of the Benefit Concerts so that feasibility can be established.

9. However, to move the cases forward in the meantime, the Debtors are seeking Bankruptcy Court approval of the Settlement so that the terms of the revised lease can be fixed immediately. Indeed, one of the Landlord's chef requirements is that the Debtors get prompt approval of the Settlement.

**The Settlement Should Be Approved**

10. The Debtors are heartened that a settlement was reached with Landlord which contains significant monetary benefits. Accordingly, the Settlement constitutes a sound exercise of the Debtors' business judgment and should be approved pursuant to Fed. R. Bankr. P. 9019(a)

as falling within the range of reasonableness. *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822, 104 S. Ct. 89 (1983).

11. As the Hon. Sean H. Lane has previously explained:

> In approving a settlement, a court must "review the reasonableness of the proposed settlement [and] … make an informed as to whether the settlement is fair and equitable and in the best interests of the estate." *In re WorldCom, Inc.* 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *see also Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)* 156 B.R. 414, 426 (S.D.N.Y 1993). The Court, however, need not "conduct a 'mini trial' on the issue. The Court need only 'canvas the issues' to determine if the 'settlement falls below the lowest point in the range of reasonableness.'" *WorldCom*, 347 B.R. at 137) *quoting In re Teltronics Serv., Inc.*, 762 F.2D 185, 189 (2d Cir. 1985)).
>
> "Settlements or compromises are favored in bankruptcy and, in fact, encouraged….. "In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which are substantial and reasonable doubts.'" *In re Adelphia Communs. Corp.*, 368 B.R. 140 226 (Bankr.S.D.N.Y.2007) (*quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2D 1 (1968)). "The decision whether to accept or reject a compromise lies within the sound discretion of the court." *Adelphia*, 368 B.R. at 226. And "[w]hile the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling. Similarly, although weight should be given to the opinions of counsel for the debtors and any creditors' committees on the reasonableness of the proposed settlement, the bankruptcy court must still make informed and independent judgement. The Court must consider whether the proposed compromise is fair and equitable by appraising itself of all the factors relevant to an 'assessment of the wisdom of the proposed compromise.' " *WorldCom*, 347 B.R. at 137 (*quoting TMT Trailer*, 390 U.S. at 424, 88 S.Ct. 1157).

*In re AMR Corp.*, 502 B.R. 23, 42-43 9 (Bankr. S.D.N.Y. 2013).

12. In reviewing the Settlement, the Court should consider the following factors:

>   (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>   (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on a judgement;
>   (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>   (4) whether other parties in interest support the settlement;
>   (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>   (6) the nature and breadth of releases to be obtained by officers and directors; and
>   (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007).

13. The Settlement stacks up very favorably under the *Iridium* factors. To begin with, without the Settlement, the prospect of eviction is very real, such that the Debtors would be unable to continue operations. The proceeds from the liquidation of the Debtors' limited assets would go the taxing authorities, and there would be no monies to pay employees or trade creditors. The Settlement therefore provides a clear benefit to the Debtors' estates.

14. The Settlement was negotiated in good faith at arms' length and provides a very real opportunity for the Debtors to remain in business, generate cash to pay all creditors, and leave the Landlord with a long-term tenant for part of its premises, while freeing up the balance of the space for re-let to a new tenant.

15. In view of the foregoing, the Debtors submit that the Settlement readily meets the test of reasonableness and represents a sound exercise of the Debtors' business judgment.

WHEREFORE, the Debtors respectfully prays for the entry of an Order approving the Settlement, and for such other relief as may be just and proper.

Dated: New York, New York
      June 28, 2023

                                      GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
                                      Attorney for the Debtors
                                      1501 Broadway, 22nd Floor
                                      New York, New York 10036
                                      (212) 221-5700

                                      By:    /s/ Kevin J. Nash, Esq.